# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                                        **Case No. 05-CR-200**

**CHRISTOPHER MOSES**
        **Defendant.**

## DECISION AND ORDER

A jury found defendant Christopher Moses guilty of possessing firearms as a felon (count one), 18 U.S.C. § 922(g), and possessing unregistered destructive devices (counts three-seven), 26 U.S.C. § 5861(d). Defendant moved for judgment of acquittal under Fed. R. Crim. P. 29 at the close of the evidence, at which time I reserved decision. He renewed the motion after return of the verdict, and I afforded the parties an opportunity to file briefs. I now deny the motion.

## I. RULE 29 STANDARD

In deciding a Rule 29 motion, the court asks whether the evidence was such that a reasonable jury could find the defendant guilty beyond a reasonable doubt, keeping in mind that it is the exclusive function of the jury to determine issues of credibility, resolve evidentiary conflicts, and draw reasonable inferences. United States v. Reed, 875 F.2d 107, 111 (7th Cir. 1989). The court may not "play thirteenth juror," United States v. Genova, 333 F.3d 750, 757 (7th Cir. 2003), and may grant the motion only if, viewing the evidence in the light most favorable to the government, the record contains no evidence upon which a rational jury could find the defendant guilty, United States v. O'Hara, 301

F.3d 563, 569-70 (7th Cir. 2002). Given this standard, the Seventh Circuit has repeatedly held that "a challenge to the sufficiency of the evidence poses a 'nearly insurmountable hurdle.'" United States v. Moore, 425 F.3d 1061, 1072 (7th Cir. 2005) (quoting United States v. Frazier, 213 F.3d 409, 416 (7th Cir. 2000)).[1]

## II. DISCUSSION

Defendant argues that (1) the government presented insufficient evidence that he knowingly possessed the firearms and destructive devices alleged, and (2) under the instructions given, the government presented insufficient evidence on the registration element of counts three through seven.

**A.    Knowing Possession**

In order to find defendant guilty of count one and counts three through seven, the jury had to find that he "knowingly possessed" the firearms and destructive devices charged in the indictment. (Jury Instructions [R. 67] at 20, 24.)

> Possession of an object is the ability to control it. Possession may exist even when a person is not in physical contact with the object, but knowingly has the power and intention to exercise direction or control over it, either directly or through others.

(Id. at 25.) "Knowingly"

> means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorance, mistake or accident. Knowledge may be proved by the defendant's conduct, and by all the facts and circumstances surrounding the case.

(Id. at 26.)

---

[1]When the court reserves decision on a Rule 29 motion, it must decide the motion based on the evidence at the time ruling was reserved. In the present case, defendant presented no evidence, so the record upon which I decide the motion is the same pre- and post-verdict.

2

The government presented sufficient evidence from which a rational jury could find these elements established beyond a reasonable doubt. The government demonstrated that the firearms and devices were seized from 517 Forest Avenue, Fond du Lac, Wisconsin, on April 19, 2005, a home defendant owned since 1996 (as sole owner since 2003, when his wife was removed from the deed). (Govt. Ex. 44.) Law enforcement seized several handguns and long guns (Govt. Ex. 1-4, 7-9), which formed the basis for count one, in addition to the explosive grenades charged in counts three through seven (Govt. Ex. 38-40). Officers also seized a rather extraordinary amount of ammunition from the home. (Govt. Ex. 5, 6, 11, 12-27.) A reasonable jury could infer knowledge of the presence of the weapons (and the ammunition that went with them), given their numerosity and location throughout defendant's house.

Officers also seized from the house a letter from a nurse addressed to defendant dated April 6, 2005, pertaining to an apparent work-related injury defendant had suffered. (Govt. Ex. 45.) A reasonable jury could infer from this evidence not only that defendant owned the home, but also that he lived there. The government further introduced a camera bag (Govt. Ex. 29) containing ammunition for, and located near, some of the charged guns in the main bedroom. The side pocket to the bag contained a photograph of a man the jury could reasonably have concluded was defendant.[2] In the photograph,

---

[2] It is true that no witness identified the man in the photo as defendant, and there are no other pictures of defendant in the record. However, the jury, which decides the facts and the inferences to be drawn from them, examined the photo and observed defendant during the trial. The jury was permitted to infer, based on their own observations, that the photo depicted defendant. Defendant offers the bald argument that the government could not ask the jury to look at the photo and conclude that it was him. During its closing argument, the government argued that the man in the photo was defendant, and drawing such inferences from the evidence is what juries are charged to do. See United States v.

3

defendant was depicted standing on an amphibious assault vehicle mounted with the type of machine gun that fired the grenades charged in counts three through seven. The government also presented evidence that defendant served in the Marines from 1990-1994, which included contact with the destructive devices and other forms of ammunition found in his house. The jury could have reasonably inferred knowing possession of these ordnance, which are not available to the general public, based on defendant's military service.

Finally, defendant was present when law enforcement searched his house on April 19, 2005, was served with a copy of the search warrant at the scene, and was arrested there after discovery of the weapons and ammunition. Based on all of this evidence, a reasonable jury could find knowing possession beyond a reasonable doubt.

In his brief, defendant points out several potential shortcomings in the government's case, both as to "possession" and "knowledge." However, viewing the evidence in the light most favorable to the government, none convince me to enter a judgment of acquittal.

  1.  **Possession**

Defendant first notes that the government presented no evidence of actual possession – no testimony of a witness who saw him with the weapons, no admission that he possessed them, and no DNA or fingerprint evidence linking him to the weapons. However, as he concedes, possession can be actual or constructive. "Constructive possession exists when a person . . . knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others."

---

Adeniji, 221 F.3d 1020, 1029 (7th Cir. 2000) ("The government may properly put before the jury the inferences that one can reasonably draw from the evidence[.]").

4

United States v. Taylor, 728 F.2d 864, 868 (7th Cir. 1984) (internal quote marks omitted); see also United States v. Wight, 968 F.2d 1393, 1398 (1st Cir. 1992) (stating that "as long as a convicted felon knowingly has the power and the intention at a given time of exercising dominion and control over a firearm or over the area in which the weapon is located, directly or through others, he is in possession of the firearm"). The Seventh Circuit has "repeatedly held that 'constructive possession may be established by a showing that the firearm was seized at the defendant's residence.'" United States v. Alanis, 265 F.3d 576, 592 (7th Cir. 2000) (quoting United States v. Walls, 225 F.3d 858, 867 (7th Cir. 2000)); see also United States v. Quilling, 261 F.3d 707, 712 (7th Cir. 2001); United States v. Kitchen, 57 F.3d 516, 520-21 (7th Cir. 1995). This is so even if others in the residence may also have access to the weapon. Kitchen, 57 F.3d at 521. Finally, constructive possession "may be proved by direct or circumstantial evidence. It is not necessary that such evidence remove every reasonable hypothesis except that of guilt." United States v. Garrett, 903 F.2d 1105, 1110 (7th Cir. 1990). The government's evidence was sufficient under this standard.

Relying on United States v. Castillo, 406 F.3d 806, 812-13 (7th Cir. 2005), defendant argues that the government failed to prove his exclusive control over 517 Forest Avenue, and that in joint possession cases the government must show a nexus between the defendant and the weapons. Castillo is distinguishable on its facts because in that case the firearm was found in an apartment that may or may not have been the defendant's.[3] In the present case, it was undisputed that defendant owned 517 Forest

---

[3]The Castillo court ultimately found the evidence sufficient to prove that it was the defendant's apartment, based primarily on mail addressed to him at that address. Id. at

5

Avenue. Further, the government demonstrated a sufficient nexus between defendant and the weapons. Defendant owned the home since 1996 (solely since 2003), received mail there that one would expect to come to a residence,[4] and had military experience with the precise weapons and ammunition recovered. Defendant's experience with these weapons went not just to his knowledge of what they were, but also tended to show possession based on his prior access to items the general public would not have. Further, a photograph of defendant was recovered from a camera bag containing some of the ammunition. This evidence, considered in its totality, was sufficient to link defendant to the weapons. See, e.g., United States v. Caldwell, 423 F.3d 754, 758 (7th Cir. 2005) (finding evidence sufficient where the defendant owned the home where the weapons were found and lived there); United States v. Richardson, 208 F.3d 626, 632 (7th Cir. 2000) (finding that the defendant had sufficient connection to the house to establish constructive possession where police found medicine bottles labeled with his name, as well as his clothes; he received mail there; and he admitted that he was the caretaker and landlord of the address).

Defendant notes the evidence that two other people, one of whom was suspected of illegal drug activity, may also have lived at 517 Forest Avenue. Defendant argued to the

---

813. In the present case, the government also introduced mail addressed to defendant.

[4]Defendant points out the absence of corroborating evidence that he lived at 517 Forest Avenue, e.g., utility records, vehicle registrations, or personal effects. The fact that the government could have presented a stronger case does not mean that the case it did present was insufficient. See United States v. Sanders, 32 F.3d 299, 302 (7th Cir. 1994) ("Although we agree that the government's evidence in this case could have been better developed, we nonetheless conclude that it is sufficient to support the jury's determination[.]").

6

jury that the weapons may have belonged to them, but the jury rejected that contention,
as it was entitled to do. There was no evidence that the others who allegedly stayed at the
house had similarly unique military experience linking them to the weapons. To the extent
that defendant tried to place the blame on Christine Stoffel – arguing that she was a drug
dealer – the government presented testimony that small-time drug dealers or users, such
as Stoffel,[5] would not possess an arsenal like that found in defendant's house. Finally, the
"fact that other adults likewise had access to the house did not negate a finding of
constructive possession." United States v. Hunte, 196 F.3d 687, 693 (7th Cir. 1999); see
also Alanis, 265 F.3d at 592.

### 2. Knowledge

Defendant further argues that, while he had the ability to exercise dominion and control over the home he owned, the government failed to show that he knew the weapons were there. However, the jury could reasonably infer knowledge based on the evidence presented. The sheer volume of weaponry and ammunition recovered from defendant's house supports knowledge. This was not a case where police uncovered a single handgun or bullet tucked away in some a remote corner of the house.[6] Rather, police found numerous firearms and ammunition in the main bedroom and destructive devices and

---

[5]Officers testified that Stoffel possessed a small amount of marijuana and some Vicodin pills, amounts inconsistent with large-scale dealing.

[6]Defendant's reliance on United States v. Wilson, 922 F.2d 1336, 1339 (7th Cir. 1991), is therefore misplaced. In that case, the defendant was charged with possession of a single handgun recovered from under the mattress in his girlfriend's apartment, where he occasionally stayed. In the present case, defendant owned the home from which the weapons were recovered, police found numerous weapons and vast amounts of ammunition, and defendant had military experience with the unusual ordnance seized from his home.

7

more ammunition in plain sight in the basement.[7] See United States v. Starks, 309 F.3d 1017, 1027 (7th Cir. 2002) (finding sufficient evidence of knowledge of presence of weapons where police found boxes of ammunition in plain sight); Walls, 225 F.3d at 867 (finding that jury may infer knowledge based on location of weapon); see also United States v. Booth, 111 F.3d 1, 2 (1st Cir. 1997) (stating that "knowledge can be inferred in some circumstances from control of the area"). Further, the photograph of defendant in the camera bag containing the ammunition that fit one of the rifles recovered provides further evidence of knowledge. See Booth, 111 F.3d at 1-2 (finding substantial evidence linking the defendant to the gun where, although the defendant claimed he did not know the gun was in a knapsack found in the car he was driving, the knapsack also contained a camera, the film of which contained photos of the defendant). Finally, defendant's military experience with the very weapons recovered – and his depiction in the photo with a machine gun used to fire the explosive grenades – provides further evidence of knowledge.

Defendant argues that his service in the Marines from 1990-1994 was too remote from the possession for the jury to draw any reasonable inferences. I disagree. Defendant apparently kept the photograph of himself standing on a Marine amphibious assault vehicle for more than a decade; it was not unreasonable for the jury to believe that he may have kept other mementos of his service too.[8] The evidence of defendant's military service was

---

[7]Defendant notes the testimony that certain portions of the house were cluttered. However, there was no testimony that the weapons and ammunition were buried out of sight.

[8]Police also found military-style ammunition boxes in defendant's house.

8

significant in this case because it placed defendant in contact with the very unusual devices charged in counts three through seven, which are used only in the military. The photograph recovered from the camera bag showed defendant standing beside the machine gun used to fire these destructive devices. Not just any member of the public would have access to or knowledge of such devices. Defendant notes that the government was unable to trace the destructive devices to any military base where he served. However, there was testimony that such items can make their way to locations other than those officially designated. Ultimately, however they got there, the items were found in defendant's basement.[9] Therefore, for all of these reasons, defendant's motion for judgment of acquittal on this basis is denied.

**B.    Registration**

I instructed the jury on counts three through seven according to the Seventh Circuit's pattern instruction for § 5861(d) cases:

> To sustain the charge of possessing a destructive device which is not registered in the National Firearms Registration and Transfer Record as charged in counts three, four, five, six and seven, the government must prove the following propositions:
>
> First, on or about April 19, 2005, the defendant knowingly possessed a destructive device; and,
>
> Second, the defendant knew that the device possessed the characteristics of any explosive grenade; and
>
> Third, the destructive device was not registered in the National Firearms Registration and Transfer Record.

---

[9] Defendant states that any inference that he stole the grenades from the military would run afoul of Fed. R. Evid. 404(b). The government made no such argument at trial.

(Jury Instructions at 24.)[10]

Defendant argues that, while the government presented evidence sufficient to prove that the grenades were not registered <u>to him</u> in the National Firearms Registration and Transfer Record, it failed to prove that they were not registered <u>at all</u>, as element three of the instruction seems to require. Defendant contends that this instruction, erroneous or not, became the law of the case and the measure of the sufficiency of the evidence. See <u>Chiarella v. United States</u>, 445 U.S. 222, 236 (1980) (citing <u>Dunn v. United States</u>, 442 U.S. 100, 106 (1979); <u>Rewis v. United States</u>, 401 U.S. 808, 815 (1971)); <u>Jabat, Inc. v. Smith</u>, 201 F.3d 852, 857 (7th Cir. 2000); <u>Thor Power Tool Co. v. Weintraub</u>, 791 F.2d 579, 584 (7th Cir. 1986). Therefore, he contends, because the evidence was insufficient on the third element, counts three through seven must be dismissed.

The Seventh Circuit's pattern instruction varies from the language of the statute of conviction, which provides: "It shall be unlawful for any person . . . to receive or possess a firearm which is not registered <u>to him</u> in the National Firearms Registration and Transfer Record[.]" 26 U.S.C. § 5861(d) (emphasis added); <u>see also</u> <u>United States v. Dukes</u>, 432 F.3d 910, 915 (8th Cir.), <u>cert. denied</u>, 126 S. Ct. 2307 (2006) (stating that the jury must find that the item "was not registered <u>to the defendant</u> in the National Firearms Registration and Transfer Record") (emphasis added). By appearing to require proof of non-registration <u>to anyone</u>, the instruction increases the government's burden beyond that required by statute to obtain a conviction.

---

[10]The parties debated the characteristics of the destructive device to be inserted into element two of the pattern instruction but agreed on elements one and three.

10

Under the particular circumstances of this case, defendant is not entitled to judgment of acquittal based on the faulty instruction under a "law of the case" theory. To the extent that the instruction varied from the language of the statute and the indictment, defendant was not prejudiced. The proof presented at trial matched the charge in the indictment and the statutory language. Defendant was on notice that he was charged with possessing destructive devices not registered <u>to him</u>. Indeed, granting the motion would constitute a windfall to defendant, as his sufficiency challenge pertains to an "element" the government was not required to prove.

Nor is this an instance in which the government, post-verdict, advances a new theory to support an infirm conviction, as in the cases defendant cites. For instance, in <u>Chiarella</u>, the Court overturned the defendant's conviction of securities fraud based on its determination that, while the defendant improperly used privileged, non-public information to his own advantage in the stock market, his conduct was not criminal because he had no duty to disclose the information to the sellers from whom he bought stock. 445 U.S. at 232-35. The defendant had acquired information about possible corporate takeovers pursuant to his employment for a printer that produced paperwork for corporate takeover bids. He used this information to purchase stock in the target companies, which he sold immediately after the takeover attempts were made public. <u>Id.</u> at 224. The government attempted to salvage the conviction by arguing that the defendant owed a duty to the acquiring corporations when he acted on information he obtained by virtue of his employment with the printer retained by those corporations. <u>Id.</u> at 235. Citing <u>Rewis</u> and <u>Dunn</u>, the Court declined to consider this theory because the jury was not instructed on it. <u>Id.</u> at 236 (stating that "we cannot affirm a criminal conviction on the basis of a theory not

11

presented to the jury"). Similarly, in Rewis, the Court held that the government could not sustain a conviction based on a theory different from the one on which the defendant was convicted. 401 U.S. at 814; see also Dunn, 442 U.S. at 106 ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process.").

In the present case, the government did not present one theory to the jury, then switch after it proved insufficient. The government's theory all along – as set forth in the indictment, presented in the evidence, and argued to the jury in closing – was that the grenades were not registered to defendant. It is undisputed that this is a legally valid theory of conviction. Defendant does not argue, nor could he, that the government was required to prove non-registration to anyone. It was only because the jury was mis-instructed that this argument became available to him. Therefore, Dunn, Chiarella and like cases are inapposite.[11]

---

[11]Likewise, in United States v. Jackson, 103 F.3d 561, 568-69 (7th Cir. 1996), the court vacated a § 924(c) conviction presented to the jury on the interpretation of the statute rejected in Bailey v. United States, 516 U.S. 137 (1995). Because there was no evidence supporting a conviction under the construction adopted by Bailey, the court reversed the conviction. In the present case, the evidence was sufficient under the correct construction of § 5861(d). Defendant also cites two civil cases from the Seventh Circuit, which are inapposite. Jabat, Inc. v. Smith, 201 F.3d 852, 857 (7th Cir. 2000); Thor Power Tool Co. v. Weintraub, 791 F.2d 579, 584 (7th Cir. 1986). In both cases, the court refused to consider the defendant's argument that the jury's damage award was improper because the defendant failed to object to the jury instruction upon which the award was based. The court in both cases noted that when the instructions are not objected to, the court can only determine whether the jury properly applied the instruction to the facts. In the present case, defendant was not prejudiced by an improper instruction that gave the plaintiff – the government – more than it was entitled to. Rather, the faulty instruction improperly increased the government's burden. The jury nevertheless was able to reach a verdict based on the evidence presented under the correct standard.

12

The jury clearly found that the devices were not registered to defendant, as the law requires for conviction. The instructions as a whole provided the jury with the information they needed to return a proper verdict. See United States v. White, 443 F.3d 582, 587-77 (7th Cir. 2006) (stating that the court considers the instructions as a whole, along with all of the evidence and arguments, to determine whether the jury was misinformed about the applicable law). Specifically, the jury was provided a copy of the indictment with the instructions, which tracked the language of the statute and alleged that defendant "knowingly possessed a destructive device that was not registered to him in the National Firearms Registration and Transfer Record." (Jury Instructions at 16-20.) The instruction containing the elements on counts three through seven referenced the indictment. (Id. at 24.) Thus, the jury was presented with the proper statutory element by reference, and it is clear that the jury properly understood its task in regard to the third element. The submission of an incorrect instruction is harmless if the jury, properly instructed, would have returned the same verdict. United States v. Pittman, 418 F.3d 704, 707 (7th Cir. 2005) (citing United States v. Folks, 236 F.3d 384, 390 (7th Cir. 2001)). That is the case here.

Although I have found no decision directly addressing this odd situation, the cases suggest that a defendant may not obtain an acquittal where an erroneous jury instruction increased the government's burden. See, e.g., United States v. Hartz, 458 F.3d 1011, 1022 n.9 & 1024-25 (9th Cir. 2006) (affirming despite special verdict form that "posed the wrong question," where, based on the evidence presented, a rational jury could find that the defendant brandished and used a firearm); Houston v. Roe, 177 F.3d 901, 908 (9th Cir. 1999) (denying habeas relief where erroneous instruction actually benefitted the

13

defendant by increasing the government's burden; "Requiring the government to satisfy the more stringent burden only helped Houston, which may explain why he did not object to this instruction until after he was convicted."); United States v. Just, 74 F.3d 902, 904 (8th Cir. 1996) (noting that error in submitting instruction regarding firearm registration, which created additional burden for the government, was harmless). In the present case, I also conclude that defendant should not obtain an acquittal based on a jury instruction which improperly raised the government's burden.

Finally, I note that defendant did not argue the government's failure of proof on the registration element, either to the jury in closing or to the court in his initial Rule 29 motion. Had he done so, the erroneous instruction could have been corrected before it was given. Instead, he first raised this argument after return of the guilty verdicts. As in Hartz, defense counsel had an opportunity to resolve any ambiguity in the jury charge prior to submission of the case. 458 F.3d at 1022 n.9. "[A] defendant should not benefit from trial court decisions that lead to ambiguities that counsel failed to resolve at trial." United States v. Vasquez-Velasco, 15 F.3d 833, 847 (9th Cir. 1994).

Therefore, for all of these reasons, defendant's motion for judgment of acquittal on counts three through seven is denied.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 70) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge